IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BRET N. BOGENSCHNEIDER,

                      Plaintiff,

       v.

KIMBERLY CLARK GLOBAL SALES, LLC,
and GODFREY & KAHN, S.C.,

                   Defendants.

OPINION and ORDER

14-cv-743-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this case brought under the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, pro se plaintiff Bret Bogenschneider alleges that defendant Kimberly Clark Global Sales, LLC (plaintiff's former employer) and Godfrey & Kahn, S.C. (the law firm representing Kimberly Clark) retaliated against him in various ways after plaintiff reported what he says was tax fraud by defendant Kimberly Clark. Three motions are now before the court: (1) defendants' motion to dismiss the complaint with prejudice, dkt. #8; (2) defendants' motion to strike several paragraphs from plaintiff's complaint, dkt. #11; and (3) plaintiff's "motion in limine," dkt. #22. Plaintiff also filed something that has the title "notice" on the document, but which he docketed as "motion requesting briefing schedule." Dkt. #26. I am disregarding the one-page document because plaintiff does not identify the issue he wishes to brief.

With respect to the other motions, I am granting defendants' motion to dismiss as

1

it relates to plaintiff's claims against Godfrey & Kahn and as to plaintiff's claim that defendant Kimberly Clark retaliated against him by filing a counterclaim in a state court lawsuit.  In all other respects, I am denying the motion to dismiss as well as defendants' motion to strike and plaintiff's "motion in limine."

OPINION

A.  <u>Motion to Dismiss</u>

1.  <u>Procedural arguments</u>

a.  Issue preclusion

The first question is whether plaintiff should be precluded from litigating his claims in this court because of an administrative decision from the Department of Labor that plaintiff received on the same issues as in this case.  Defendants say yes, pointing to the general rule that claim and issue preclusion apply to agency decisions when the agency was acting in a judicial capacity and the parties had a full and fair opportunity to litigate.  <u>King v. Burlington Northern & Santa Fe Railway Co.</u>, 538 F.3d 814, 818 (7th Cir. 2008).

Although that is the general rule under federal common law, "Congress may preempt the common law by passing statutes that define the operation of res judicata in particular contexts."  <u>Waid v. Merrill Area Public Schools</u>, 91 F.3d 857, 863-64 (7th Cir. 1996).  <u>See also</u> <u>Meyer v. Rigdon</u>, 36 F.3d 1375, 1379-80 (7th Cir. 1994) ("[W]e must conclude that Congress intended to preempt the common law [of issue preclusion] by enacting section 523(a)(11).").  That is what Congress has done in the context of the enforcement provision

for retaliation claims brought under the Sarbanes-Oxley Act.   Under 18 U.S.C. § 1514A(b)(1),

> A person who alleges discharge or other discrimination by any person in violation of subsection (a) may seek relief under subsection (c), by—
>
> (A) filing a complaint with the Secretary of Labor; or
>
> (B) if the Secretary has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant, bringing an action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.

In this case, it is undisputed that the department did not issue a final decision within 180 days of the filing of plaintiff's administrative complaint.   Further, defendants do not argue that the delay was caused by any bad faith by plaintiff.   Thus, under the plain language of the statute, plaintiff is entitled to a de novo review in this court.

Defendants do not deny that a straightforward application of the statutory text permits plaintiff to litigate his claim in this court without regard to the administrative proceedings.   That should be the end of the matter.   Hui v. Castaneda, 559 U.S. 799, 812-13 (2010) ("We are required . . . to read the statute according to its text.").   Nevertheless, defendants argue for a narrow construction of § 1514A.   They note that plaintiff received a decision from the administrative law judge after the 180-day deadline expired and that he waited to file a lawsuit in this court until that decision was issued.   They argue that § 1514A should be construed to limit de novo review in the district court to situations in which the plaintiff never received an administrative decision.   Otherwise, it allows plaintiffs to take a "wait and see approach" after 180 days, in which they can accept

3

the administrative decision if they like it or file a lawsuit in federal court if they don't.  In addition, defendants argue that giving plaintiff de novo review is a waste of judicial resources that requires the court and the parties to duplicate the administrative proceedings.

I agree with defendants that there are strong policy arguments for limiting the scope of § 1514A, but they are not supported by the text.  The statute gives a plaintiff the right to seek de novo review in district court if the department has not issued a final decision in 180 days.  There is no language in the statute that limits this right if a final decision comes out at some later time.  (At some point, a plaintiff could run into a problem with the statute of limitations, e.g., Jones v. Southpeak Interactive Corp., 2013 WL 1155566, at *7 (E.D. Va. 2013), but defendants have not raised a statute of limitations argument.)  Furthermore, it is undisputed that there was no "final" decision at the time that plaintiff filed this lawsuit. Under 29 C.F.R. § 1980.110, after an administrative law judge issues a decision, an employee may seek review by the Administrative Review Board.  If the board accepts review, the administrative law judge's decision becomes "inoperative" and the board issues a final decision.  Id.  Although an administrative law judge's order may become the final decision if the employee does not seek review within 10 days of the order, id., it is undisputed that plaintiff filed this lawsuit within 10 days after the administrative law judge issued his decision.

In support of a narrow interpretation of § 1514A, defendants cite an agency ruling that "anticipates" that federal courts will apply issue preclusion to administrative law judge decisions that are issued after 180 days.  69 F.R. 52104-01, 2004 WL 1876043 at 18-19.

4

It is not surprising that the agency would want courts to interpret § 1514A in a way that gives the agency's decisions preclusive effect, but an agency's self-serving interpretation of an unambiguous statute is not entitled to any deference, Zuni Public School District No. 89 v. Department of Education, 550 U.S. 81, 93 (2007), so the ruling defendants cite cannot carry the day.

This leaves defendants' argument that a plain language reading of §1514A should be rejected because that reading is absurd in light of the policy concerns identified above. Logan v. United States, 552 U.S. 23, 36-37 (2007) ("Statutory terms . . . may be interpreted against their literal meaning where the words could not conceivably have been intended to apply to the case at hand.") (internal quotations omitted).  In Stone v. Instrumentation Laboratory Co., 591 F.3d 239 (4th Cir. 2009), the court explained why that argument is not persuasive:

> Although, in the eyes of the Secretary [of the Department of Labor], Congress's decision to permit duplication of efforts is problematic, neither Appellees nor the Secretary present a compelling argument as to why such duplication is "absurd."   Congress unquestionably chose an aggressive timetable for resolving whistleblower claims and reasonably created a cause of action in an alternative forum should the DOL fail to comply with such schedule. A natural result of the aggressive timeframe is that efforts will be duplicated when the DOL engages in a thorough, yet administratively non-"final", process that fails to resolve the administrative case within the prescribed timeframe. Neither the Secretary nor the courts have the authority to engage in creative interpretation of the statute to avoid duplication of efforts, even if the goal for doing so is laudable.

> Regardless of whether the DOL has, in practice, found it unrealistic to comply with Congress's aggressive timetable, Congress plainly has the authority, in balancing speed against resources, to rationally weigh timeliness as a more compelling concern and provide that proceedings begin anew in district court if the DOL is unable to reach a final decision within 180 days. If the

aggressive statutory timetable is unworkable in practice, the remedy must be provided by Congress, not the courts, as we do not reweigh policy determinations made by the legislature.

Id. at 248-49 (footnotes and citations omitted).

As plaintiff points out, several other courts have reached the same conclusion. E.g., Jordan v. Sprint Nextel Corp., 3 F. Supp. 3d 917, 928 (D. Kan. 2014) ("The Secretary did not issue a final decision within 180 days of the filing of the complaint, and there is no showing that the delay was due to Plaintiff's bad faith. Thus, the plain language of the statute states that Plaintiff has the right to seek de novo review in federal court.") (footnote omitted); Candler v. URS Corp., 2013 WL 5353433, at *7 (N.D. Tex. 2013) ("[H]owever sound a policy argument [the defendant] offers regarding avoiding duplicative proceedings, the Court cannot depart from the statute's plain language when it is presented with a result that is personally disagreeable rather than one that is actually absurd.") (internal quotations omitted); Wong v. CKX, Inc., 890 F. Supp. 2d 411, 420 (S.D.N.Y. 2012) ("Under the plain terms of the Sarbanes–Oxley Act, Wong has a statutory right to de novo review because she has met the requirements of the statute.").

Although the Court of Appeals for the Seventh Circuit has not interpreted § 1514A(b)(1), Stone and the other cases are consistent with this circuit's practice of declining to apply the "anti-absurdity" canon broadly. "Several opinions . . . hold that only a linguistic glitch permits invocation of the anti-absurdity canon. See, e.g., Spivey v. Vertrue, Inc., 528 F.3d 982 (7th Cir. 2008); United States v. Logan, 453 F.3d 804 (7th Cir. 2006), affirmed, 552 U.S. 23 (2007). Allowing the 'correction' of substantive problems would make too

much inroad on the legislative power, because judges tend to see as 'absurd' propositions with which they disagree."   Owner-Operator Independent Drivers Association, Inc. v. Mayflower Transit, LLC, 615 F.3d 790, 792-93 (7th Cir. 2010).

Defendants do not argue that Stone is incorrect, but in their opening brief they say that Stone is distinguishable because the plaintiff in that case "initiated [the district court] action before he participated in a full-fledged adjudication of the merits before an ALJ." Dfts.' Br., dkt. #9, at 20.  This argument is puzzling because the plaintiff in Stone actually had proceeded *further* than the plaintiff in this case by beginning an appeal with the administrative review board before filing his lawsuit in district court.  Stone, 591 F.3d at 241-42.  In their reply brief, defendants say that, in Stone, "the administrative proceeding never progressed to an evidentiary hearing."  Dfts.' Br., dkt. #21, at 7.  Although it is true that the plaintiff in Stone did not receive an evidentiary hearing, that is irrelevant because the Court of Appeals for the Fourth Circuit's decision did not rest on the nature or quality of the administrative proceedings.  Rather, the court relied simply on the language of § 1514A(b)(1).

Defendants cite two district court cases that adopted their position. Groncki v. AT & T Mobility LLC, 640 F. Supp. 2d 50 (D.D.C. 2009); Allen v. Stewart Enterprises, Inc., No. 05–cv–4033 (E.D. La. Apr. 6, 2006), attached to dkt. #10, exh g.  In Groncki, 640 F. Supp. 2d at 53-54, the court acknowledged that "the statutory text itself may seem to permit" the plaintiff's lawsuit, but the court construed the statute narrowly anyway, relying on the "anti-absurdity" canon of construction and on the agency's published interpretation

7

of § 1514A(b)(1).  Because I have rejected both of those arguments, I do not find <u>Groncki</u> persuasive.  In <u>Allen</u>, the court took the position that § 1514A allowed the plaintiff to *file* a federal lawsuit, but did not prevent the court from applying issue preclusion.  The problem with that view is that it overlooks the fact that § 1514A requires "de novo review" in the district court.  Obviously, a court cannot apply issue preclusion at the same time it applies de novo review.

Finally, I note that not all policy arguments favor a narrow interpretation.  Although defendants have pointed out correctly that applying the plain language of § 1514A may cause inefficiency, duplication of effort and even unfairness in some cases, the same consequence could follow from applying defendants' view that issue preclusion should apply even with respect to agency decisions issued after the 180-day deadline.  For example, under defendants' view, if the agency issued its decision months or even years after plaintiff filed his federal lawsuit, the district court would be required to dismiss the case under the doctrine of issue preclusion in light of the agency's untimely decision.  Although defendants might argue that preclusion should apply only when the decision is issued before the plaintiff files his federal lawsuit, I see no textual basis in the statute for making that distinction.  In any event, because the plain language of § 1514A(b)(1) allowed plaintiff to file and litigate this case, I cannot dismiss plaintiff's complaint under the doctrine of issue preclusion.

b.  Laches and election of remedies

Alternatively, defendants argue that the common law doctrines of laches and election

of remedies should bar plaintiff from litigating in federal court.  "The doctrine of laches derives from the maxim that those who sleep on their rights, lose them. For the doctrine to apply, [defendants] must show (1) lack of diligence by [plaintiff], and (2) prejudice to [defendants]."  Navarro v. Neal, 716 F.3d 425, 429-30 (7th Cir. 2013).  Even if I assume that plaintiff was not diligent in bringing this lawsuit, defendants' laches argument fails on the second element.  Defendants say that plaintiff's "delay in filing the present action caused discernable prejudice and injury to" defendants because they have "already expended substantial time and incurred significant expense defending [themselves] against Bogenschneider's baseless claims in the administrative proceeding."  Dfts.' Br., dkt. #9, at 23.  However, defendants would have suffered this same prejudice even if plaintiff had brought this lawsuit earlier, that is, after the 180-day deadline but before the administrative law judge issued his decision.  Either way, defendants would have to incur additional expense and participate in a duplicative proceeding.  The prejudice to defendants is not caused by plaintiff's delay, but by § 1514A, which allows plaintiff to obtain de novo review in this court.

With respect to election of remedies, defendants argue that, by waiting for the administrative law judge to issue his decision, plaintiff waived any right to litigate in district court.  However, defendants do not develop this argument or cite any authority that the election of remedies doctrine can override plaintiff's right to de novo review under § 1514A.  Cf. Batiste v. Furnco Construction Corp., 503 F.2d 447, 450 (7th Cir. 1974) (rejecting "the application of the doctrines of election of remedies and res judicata to Title VII actions

where plaintiffs had litigated their charges to final adjudication in state proceedings" because of "strong Congressional policy that plaintiffs not be deprived of their right to resort to the federal courts for adjudication of their federal claims under Title VII").

Accordingly, I conclude that defendants have not shown at this stage of the proceedings that the doctrines of laches or election of remedies require dismissal of this case.

2.  Merits

Under 18 U.S.C. § 1514A, "[n]o [public] company . . . or any officer, employee, contractor, subcontractor, or agent of such company . . . may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee" that is protected under the statute.   The Court of Appeals for the Seventh Circuit has stated that a claim under § 1514A has four elements: (1) the plaintiff engaged in protected activity; (2) the employer knew that the plaintiff engaged in the protected activity; (3) the plaintiff suffered an "unfavorable personnel action;" and (4) the protected activity was a "contributing factor" in the unfavorable action.   Harp v. Charter Communications, Inc., 558 F.3d 722, 723 (7th Cir. 2009).

For the purpose of their motion to dismiss, defendants do not deny that plaintiff has alleged adequately that he engaged in protected activity, that defendants knew he engaged in protected activity or that his protected activity was a contributing factor in defendants' alleged conduct. However, the parties dispute whether Godfrey & Kahn is a proper

10

defendant and whether plaintiff has identified any allegedly retaliatory actions by defendants that can serve as the basis for a claim under § 1514A.

a. defendant Godfrey & Kahn

Plaintiff argues that defendant Godfrey & Kahn may be held liable as an "agent" of defendant Kimberly Clark, but that argument is a red herring.  Even if I assume that there is an agency relationship between the two companies within the meaning of § 1514A, the text of the statute is clear that it prohibits retaliation against an "employee."  Because plaintiff does not allege that he had an employment relationship with Godfrey & Kahn, he cannot sustain a claim against that defendant.

Plaintiff cites <u>Lawson v. FMR LLC</u>, 134 S. Ct. 1158, 1161 (2014), in support of his position, but it is not clear why.  The question in <u>Lawson</u> was whether "§ 1514A shield[s] only those employed by the public company itself, or [also] employees of privately held contractors and subcontractors—for example, investment advisers, law firms, accounting enterprises—who perform work for the public company?"  <u>Id.</u> at 1161.  The Court concluded that "no contractor may discriminate against its own employee for whistleblowing."  <u>Id.</u> (alterations omitted) .  Although the Court listed "law firms" in its question, this was in the context of *an employee* of the law firm, so <u>Lawson</u> does not help plaintiff.  In fact, the Court stated multiple times in the opinion that § 1514A is best read as requiring an employment relationship.  <u>Id.</u> at 1165 ("The ordinary meaning of 'an employee' in this proscription is the [agent's] own employee."); <u>id.</u> at 1167 ("Congress presumed an employer-employee

relationship between the retaliator and the whistleblower."); id. ("Section 1514A's enforcement procedures and remedies similarly contemplate that the whistleblower is an employee of the retaliator."); id. ("The most sensible reading of § 1514A's numerous references to an employer-employee relationship between the respondent and the claimant is that the provision's protections run between [agents] and their own employees.").

Accordingly, I am granting defendants' motion to dismiss as it relates to defendant Godfrey & Kahn.  Regardless whether Godfrey & Kahn may have participated in any of the alleged retaliation, the law firm is not covered by § 1514A because the firm was not plaintiff's employer.  For the remainder of the opinion, I will refer to defendant Kimberly Clark simply as "defendant."


b.  allegedly retaliatory acts

In his complaint, plaintiff includes three "counts" of alleged retaliation by defendant: (1) "retaliatory termination for cause"; (2) "blacklisting" through various defamatory statements made in the context of other lawsuits; and (3) "harassment" by disclosing confidential information in the context of another federal lawsuit and by filing a counterclaim in a state court law suit.  In its motion to dismiss, defendant argues that plaintiff "fails to allege an actionable adverse employment action."  Dkt. #9 at 7.

One problem with defendant's argument on this issue is that it has ignored plaintiff's allegation that defendant terminated him for cause because he engaged in activity protected by the statute.  Because defendant identifies no reason why that conduct does not qualify

as retaliation under § 1514A, I must allow that claim to go forward.  (A review of the administrative law judge's decision shows that he overlooked the termination claim as well, which would be another reason why issue preclusion could not apply to that claim, even in the absence of a right to devo review under § 1514.  <u>Bernstein v. Bankert</u>, 702 F.3d 964, 994 (7th Cir. 2012) (one element of issue preclusion is that issue was "actually litigated and resolved" in earlier proceeding).)

With respect to plaintiff's remaining claims, the parties divide defendant's allegedly retaliatory actions into three categories: (1) allegedly defamatory and confidential statements made by defendant's counsel in court filings; (2) a counterclaim defendant filed in the state court action; and (3) an allegedly defamatory affidavit and employment records filed in the state court action by one of defendant's employees.   I will consider each of these categories in turn.

1) statements by counsel

With respect to counsel's statements, plaintiff does not identify any particular statements or explain how those statements were defamatory or a breach of confidentiality, except that he says that some of the statements had been part of sealed documents.  However, defendant does not seek dismissal of any of plaintiff's claims on the ground that plaintiff did not provide adequate notice under Fed. R. Civ. P. 8, so I do not consider that issue.  In addition, defendant does not argue that it cannot be held liable for statements made by its counsel, that making defamatory statements or disclosing private information

13

cannot qualify as retaliation under the statute or that the statements at issue cannot trigger liability because they did not affect plaintiff's "terms and conditions of employment," so I do not consider those questions either.

Defendant's sole argument on this issue is that "[s]tatements of counsel do not, as a matter of law, constitute an adverse employment action."  Dfts.' Br., dkt. #9, at 8.  In support of this argument, defendants rely entirely on a series of administrative decisions involving retaliation claims in which the Department of Labor has stated that "[s]tatements by counsel in a brief do not constitute 'evidence.'"  Levi v. Anheuser Busch Companies, Inc., 2006 WL 6576806, *2 (U.S. Dept. of Labor SAROX 2006).  See also Jordan v. Sprint Nextel Corp., 2010 WL 5127405, *6 (U.S. Dept. of Labor SAROX 2010) ("[U]nder Levi the statements of counsel are not evidence."); Levi v. Anheuser Busch Companies, Inc., 2008 WL 1925640, at *11 ("[S]tatements of . . . counsel are not evidence.") (ARB 2008).

In Levi and Johnson, the agency did not explain what it meant or provide any reasoning, but instead simply cited other cases.  Powell v. COBE Laboratories, Inc., 2000 WL 235241, at *13 (10th Cir. Mar. 2, 2000); Barcamerica International USA Trust v. Tyfield Importers, Inc., 289 F.3d 589, 593 n.4  (9th Cir. 2002).  A review of the cases cited by the department shows that they have nothing to do with the questions in this case. Rather, in Powell, the court simply stated that statements by counsel during a trial are not evidence that the jury may consider.  In Barcamerica, the court stated that a party could not create a genuine issue of material fact through attorney argument.  In neither case did the court consider whether litigation documents can qualify as retaliation in a subsequent case.

14

Because neither the department nor defendant has cited any reasoning to support the rule in <u>Levi</u> and <u>Jordan</u>, I cannot grant defendant's motion to dismiss under the authority of those cases.

Another potential argument for dismissing this claim is what courts have called a "litigation privilege," in which a party cannot be sued for actions taken in the context of defending a lawsuit. In fact, the administrative law judge in this case relied on that doctrine, citing <u>Steffes v. Stepan Co.</u>, 144 F.3d 1070 (7th Cir. 1998). In <u>Steffes</u>, the court stated that "it will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation prohibited by" federal employment statutes because "[d]efendants . . . must have some leeway to investigate possible defenses without undue fear of being subjected to additional liability in retaliation suits." <u>Id.</u> at 1075, 1077   I made a similar observation several years later in <u>Friemuth v. Fiskars Brands, Inc.</u>, 681 F. Supp. 2d 985, 994 (W.D. Wis. 2010).

Although there may be strong arguments for applying <u>Steffes</u> in this case, defendants have disclaimed any reliance on <u>Steffes</u> or on the concept of a litigation privilege. Dfts.' Br., dkt. #21, at 3 ("Whether Defendants are protected by a litigation privilege, however, is beside the point for the purpose of the current motion to dismiss."). Particularly because the court of appeals has stated that "some actions taken in the course of litigation could conceivably constitute retaliation," <u>Steffes</u>, 144 F.3d at 1075, I decline to apply the privilege at this early stage without any argument from defendant that it should apply. Defendant is free to develop this issue in a motion for summary judgment, but I am denying its motion

to dismiss this claim because it has not developed a persuasive argument that the claim is legally deficient on its face.

2) counterclaim

Plaintiff alleges that defendant retaliated against him by filing a frivolous counterclaim in a state court lawsuit between him and defendant.  I agree with defendant that this claim is untimely.  Under 29 C.F.R. § 1980.103(d), an employee has 180 days to file a claim "after an alleged violation of the Act occurs or after the date on which the employee became aware of the alleged violation of the Act."  (Both sides assume that the deadline in § 1980.103 is controlling, so I will do the same.)   Defendant filed the counterclaim at issue on August 26, 2011, Cpt. ¶ 42, dkt. #1, but plaintiff did not file his administrative claim until October 23, 2012, well after the 180-day deadline.  Id. at ¶ 2.

In his opposition brief, plaintiff alleges that defendant's counterclaim "was maintained until December 2012" and the harm from the counterclaim "continued as long as the counterclaim remained outstanding."  Dkt. #15 at 7.  (In his complaint, plaintiff alleges that defendant maintained its counterclaim until October 5, 2012, Cpt. ¶ 42, dkt. #1, but the discrepancy is not material to the resolution of this claim.)  Although plaintiff does not say this expressly, I assume that he means to argue that he is entitled to maintain his retaliation claim for all the days within the 180-day period before defendants withdrew the counterclaim.

The problem with this argument is that there is only one discrete act that allegedly

16

injured plaintiff: the filing of the counterclaim.  Although that one act may have continued to harm plaintiff after filing, that is not enough to toll the limitations period.  Under plaintiff's view, if an employer retaliates against an employee by demoting him, the limitations period does not run until the employer restores the employee to his previous position, but that is not the law.  Moore v. Burge, 771 F.3d 444, 446-47 (7th Cir. 2014).

"[W]hen there is only one wrongful act, the claim accrues with the first injury." Palmer v. Board of Education of Community Unit School District 201-U, Will County, Illinois, 46 F.3d 682, 685-86 (7th Cir. 1995).  See also Limestone Development Corp. v. Village of Lemont, Illinois, 520 F.3d 797, 801 (7th Cir. 2008) ("The statute of limitations begins to run upon injury (or, as is standardly the case with federal claims, upon discovery of the injury) and is not tolled by subsequent injuries.").  For example, in Savory v. Lyons, 469 F.3d 667, 672-73 (7th Cir. 2006), the court considered whether the defendants' "continued refusal" to release physical evidence tolled the limitations period on the plaintiff's § 1983 claim regarding the denial of that evidence.  The court held that it did not, on the ground that the defendants' decision "was a discrete act that took place upon the first refusal that merely had lingering consequences."  In other words, the plaintiff's "continued lack of access to the evidence [was] not a fresh act on the part of [the defendants].  Rather, it [was] the natural consequence of the discrete act that occurred when [the defendants] first denied access to the evidence."  Id.  See also Delaware State College v. Ricks, 449 U.S. 250, 258 (1980) ("The proper focus is upon the time of the [defendant's] acts, not upon the time at which the consequences of the acts became most painful.").

17

The same logic applies in this case.  Because it is undisputed that plaintiff had notice of the counterclaim when defendants filed it and he does not identify any new actions that defendant took later related to this claim, I am granting defendant's motion to dismiss as to this claim on the ground that it is untimely.

 3) affidavit and employment records

Plaintiff alleges that, in the context of another lawsuit between him and defendant, Pamela Vross, an employee of defendant, submitted an affidavit in which she stated falsely that plaintiff had received a "poor performance review."  Cpt.  ¶ 11, dkt. #1.  In addition, she attached what plaintiff says were "false and defamatory" employment records.  Id. at ¶ 39.  See also Plt.'s Br., dkt. #15, at 10 ("[T]he records were false or at the minimum extraordinarily misleading.").  Plaintiff alleges that Vross made the false allegations and included false records to hinder plaintiff's attempts to find new employment, though he does not allege expressly that Vross submitted the affidavit because of his protected conduct.  Cpt. ¶ 39, dkt. #1.

In its brief in support of its motion to dismiss, defendant does not argue that plaintiff failed to allege adequately that Vross had a retaliatory motive for submitting the affidavit, that defendant cannot be held liable for Vross's conduct, that plaintiff did not provide sufficient notice regarding what was false and defamatory about the employment records or that a false allegation regarding a performance review is not sufficiently adverse to support a retaliation claim.  Accordingly, I do not consider any of those issues in this opinion.

18

Instead, defendant makes two other arguments in its opening brief. (Defendant raises new arguments in its reply brief, but those arguments are forfeited for the purpose of defendant's motion to dismiss because defendant did not include them in its opening brief. Narducci v. Moore, 572 F.3d 313, 324 (7th Cir. 2009).) First, defendant says that plaintiff's allegation regarding the "poor performance" statement "is nothing but his subjective (and unreasonable) interpretation of the court filing." Dfts.' Br., dkt. #9, at 15. However, defendant does not develop this argument beyond that one sentence. Because plaintiff alleges that Vross made the statement, I cannot accept defendant's argument that plaintiff simply misinterpreted the affidavit.

Second, defendant argues that the affidavit and records do not have "anything to do with [plaintiff's] employment at [Kimberly Clark.]" Id. This argument has some promise. Although defendant does not develop the argument or cite any authority for it, presumably, defendant means to argue that the affidavit and employment records were filed after plaintiff stopped working for defendant and cannot serve as the basis for a retaliation claim under § 1514A because those documents did not affect plaintiff's "terms and conditions of employment."

As an initial matter, all of the alleged retaliation that defendant discusses occurred after plaintiff's termination, so it is not clear why defendant did not make this argument for all of plaintiff's other claims. For example, defendant did not raise this issue with respect to plaintiff's claim regarding counsel's statements. (Although defendant did make a similar argument with respect to the allegedly retaliatory counterclaim, I did not need to consider

19

that issue in light of my conclusion regarding the statute of limitations.)

It may be that the reason for defendant's reluctance to press this issue more broadly is that the Department of Labor's interpretation of § 1514A on this issue is confusing and inconsistent.  For example, in some cases, the department has stated that "with the exception of blacklisting or other active interference with subsequent employment, the . . . employee protection provisions [in § 1514A] essentially shelter an employee from employment discrimination in retaliation for his or her protected activities, while the complainant is an employee of the respondent."  Harvey v. The Home Depot, Inc., 2004 WL 5840284, *3 (U.S. Dept. of Labor SAROX 2004).  Harvey seems to support a general rule that post-employment retaliation is not protected by § 1514A.  However, Harvey does not support defendant's argument because the case includes an exception for "interference with subsequent employment," which is what plaintiff is alleging in this case.  Further, other decisions by the department have interpreted § 1514A even more broadly.  In Jordan v. Sprint Nextel Corp., 2010 WL 5127405, at *9 (U.S. Dept. of Labor SAROX 2010), the department stated that "the [Administrative Review Board has] established a rule for all whistleblower cases adjudicated by the Department of Labor that conduct constitutes a materially adverse employment action if it could well dissuade a reasonable worker from making or supporting a charge of discrimination."  That ruling seems to eliminate any employment nexus for a retaliation claim, with the exception that the plaintiff must be an employee when he engaged in the protected conduct.

There may be a strong argument in favor of a view that *no* post-employment conduct

can qualify as retaliation under § 1514A.  In concluding in <u>Jordan</u> and <u>Harvey</u> that some activities unrelated to the plaintiff's employment with the defendant are covered by § 1514A, the agency relied on cases such as <u>Burlington Northern and Santa Fe Railway Co. v. White</u>, 548 U.S. 53 (2006), and <u>Robinson v. Shell Oil Co.</u>, 519 U.S. 337 (1997), involving interpretations of Title VII of the Civil Rights Act.  However, in construing Title VII broadly, the Supreme Court has emphasized that the retaliation provision in that statute is *not* limited to actions that alter an employee's terms and conditions of employment. <u>White</u>, 126 548 U.S. at 62-63 ("[In Title VII's anti-discrimination provision,] [t]he . . . words 'hire,' 'discharge,' 'compensation, terms, conditions, or privileges of employment,' 'employment opportunities,' and 'status as an employee' . . . explicitly limit the scope of that provision to actions that affect employment or alter the conditions of the workplace.  No such limiting words appear in the antiretaliation provision.").  Thus, it is questionable whether Title VII cases provide helpful guidance in interpreting § 1514A.

Defendant did not discuss any of these wrinkles in the law, much less ask this court to disregard the agency's precedent on this issue.  Further, I cannot say that resolution of the issue is so obvious that it would be appropriate to dismiss one or more of plaintiff's claims without allowing plaintiff to respond meaningfully, particularly because the Court of Appeals for the Seventh Circuit has not considered this issue. Accordingly, I am denying defendant's motion to dismiss as to this claim.  Defendant is free to raise a more developed argument on this issue in the context of a motion for summary judgment.

## B.  Motion to Strike

Defendant has filed a motion to strike paragraphs 21 through 33 of the complaint on the ground that the allegations in those paragraphs relate to "confidential business information."  In addition, defendant asks the court to seal plaintiff's complaint and replace it with a redacted version that omits the challenged paragraphs.  Defendant seeks relief under Fed. R. Civ. P. 12(f), which allows a court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter," and Fed. R. Civ. P. 26(c)(1)(G), which allows a party to seek a protective order for discovery related to a "trade secret or other confidential research, development, or commercial information."

Defendant acknowledges that the allegations in paragraphs 21 through 33 relate to plaintiff's conduct that he believes is protected by § 1514A.  It is also undisputed that one of the elements of plaintiff's claims is a reasonable belief that defendant was violating securities law, 18 U.S.C. § 1514A(a)(1), which means that plaintiff was required to plead allegations regarding his belief.  Cf. Peele v. Burch, 722 F.3d 956, 959 (7th Cir. 2013) (affirming dismissal of retaliation claims under First Amendment for failing to adequately identify protected conduct).  Therefore, I cannot conclude that the allegations are immaterial or impertinent.  Defendant does not develop an argument that the allegations are "scandalous," but even if it was making that argument, "courts will usually strike so-called scandalous material only if it is irrelevant and immaterial to the issues in controversy." 2 Moore's Federal Practice § 12.37[3] (3d. ed.).  Finally, the parties debate whether plaintiff's allegations included more detail than necessary to state a claim, but this issue seems to be

a red herring because defendant cites no authority for the view that allegations may be stricken from a complaint simply because they go beyond the bare minimum required by federal pleading rules.

Although defendant cites Rule 26(c)(1)(G) in its motion, it does not develop an argument under the rule or even cite any authority that the rule applies to documents such as a complaint that are not part of discovery. Federal courts have inherent authority to seal documents, including complaints, but the standard is a demanding one. "Secrecy in judicial proceedings is disfavored, as it makes it difficult for the public (including the bar) to understand why a case was brought (and fought) and what exactly was at stake in it and was the outcome proper." <u>GEA Grp. AG v. Flex-N-Gate Corp.</u>, 740 F.3d 411, 419 (7th Cir. 2014). Therefore, "[d]ocuments that affect the disposition of federal litigation are presumptively open to public view . . . unless a statute, rule, or privilege justifies confidentiality." <u>In re Specht</u>, 622 F.3d 697, 701 (7th Cir. 2010). In this case, defendant argues that the complaint contains "confidential" and "sensitive" information, but it cites no statute, rule or privilege that would prohibit disclosure of any particular allegation in the complaint.

Accordingly, I am denying defendant's motion to strike and for a protective order. If defendant chooses to renew its motion, it should be prepared to explain why particular allegations should remain secret and provide appropriate authority.

C. "Motion in Limine"

In a document that plaintiff calls "motion in limine," he asks for a particular scheduling order and limitations on discovery. In addition, he seems to be arguing that there should be no trial in this case. Plaintiff's arguments about the schedule have been mooted by Magistrate Judge Stephen Crocker's preliminary pretrial conference order, which includes a full schedule. Dkt. #33. With respect to discovery, plaintiff cites no authority for limiting it and he does not object to any particular discovery request. If he has a valid objection to any discovery that defendant requests from him, he may raise an objection and cite appropriate authority at that time. Cf. Vega v. Cherry Corp. Long Term Disability Benefits Plan, 2009 WL 2178258, at *8 (N.D. Ill. 2009) ("When a court reviews a benefit determination under de novo review, it has the discretion to 'limit the evidence to the record before the plan administrator, or it may permit the introduction of additional evidence necessary to enable it to make an informed and independent judgment.'") (quoting Casey v. Uddeholm Corp., 32 F.3d 1094, 1099 (7th Cir.1994)).

Finally, plaintiff's only support for an argument regarding a trial in this case is his belief that the phrase "de novo review" is inconsistent with a trial, but that is not necessarily the case. E.g., Casey, 32 F.3d at1099 (de novo review of administrative proceeding may require bench trial); Stein's, Inc. v. Blumenthal, 649 F.2d 463, 466 (7th Cir. 1980) (statute calling for "de novo review" in district court may require evidentiary hearing in some cases but not others). In any event, plaintiff's argument about a trial is premature because both sides seem to anticipate that the case can be resolved on a motion for summary judgment.

24

Plt.'s Br., dkt. #22, at 1 ("Plaintiff is prepared to file [a] [m]otion for [s]ummary [j]udgment."); Dfts.' Br., dkt. #25, at 2 ("[T]his case can likely be resolved by dispositive motion.").  If genuine issues of material fact remain after the court resolves any summary judgment motions, the parties can raise arguments then about how those disputes should be resolved.

ORDER

IT IS ORDERED that

1.  The motion to dismiss filed by defendants Kimberly Clark Global Sales, LLC and Godfrey & Kahn, S.C., dkt. #8, is GRANTED with respect to plaintiff Bret Bogenschneider's claims against defendant Godfrey & Kahn and with respect to plaintiff's claim that defendant Kimberly Clark retaliated against him by filing a counterclaim in a state court action.  The complaint is DISMISSED as to defendant Godfrey & Kahn.  Defendants' motion is DENIED in all other respects.

2.  Defendants' motion to strike paragraphs 21 through 33 of the complaint and for a protective order, dkt. #11, is DENIED.

3.  Plaintiff's "motion in limine," dkt. #22, is DENIED.

4.  Plaintiff's "motion requesting briefing schedule," dkt. #26, is DENIED.

Entered this 25th day of February, 2015.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge
