IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BRET N. BOGENSCHNEIDER,

                    Plaintiff,

      v.

KIMBERLY CLARK GLOBAL SALES, LLC,

                 Defendant.

OPINION and ORDER

14-cv-743-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se plaintiff Bret Bogenscheider was employed as a tax lawyer for defendant Kimberly Clark Global Sales, LLC from 2007 until 2012.   He is proceeding in this court on a claim that defendant retaliated against him in various ways after he reported what he says was defendant's tax fraud, in violation of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A. In his complaint, plaintiff lists three "counts" of alleged retaliation by defendant: (1) "retaliatory termination for cause"; (2) "blacklisting" through various defamatory statements made in the context of a lawsuit filed in state court; and (3) "harassment" by disclosing confidential information in the context of the same lawsuit.   (Plaintiff also says that defendant filed a counterclaim in the state court law suit to retaliate against plaintiff, but I dismissed that claim as untimely in a previous order.  Dkt. #38.)

Plaintiff has filed a motion for summary judgment, dkt. #28, which is ready for review.   In its opposition materials, defendant argues that plaintiff is not entitled to

1

summary judgment and that judgment should be entered in its favor for multiple reasons. First, defendant says that none of the actions challenged by plaintiff qualify as retaliation under § 1514A.  Second, defendant says that plaintiff has failed to adduce evidence that defendant took any of the alleged actions because of plaintiff's report of tax fraud.  Finally, with respect to defendant's alleged retaliatory conduct in the state court lawsuit, defendant says that it is entitled to a "litigation privilege."

I agree with defendant that the undisputed facts show that plaintiff agreed to the terms of his departure from Kimberly Clark and he was not "terminated for cause" as he says, so he cannot rely on that issue to show retaliation.  In addition, I conclude that plaintiff has not adduced any evidence of retaliatory intent and that, even if he had, all of the conduct at issue occurred in the context of a state court lawsuit, so defendant is entitled to assert a litigation privilege, in accordance with Steffes v. Stepan Co., 144 F.3d 1070 (7th Cir. 1998).

Although defendant did not file its own motion for summary judgment, "[d]istrict courts have the authority to enter summary judgment sua sponte as long as the losing party was on notice that it had to come forward with all its evidence."  Ellis v. DHL Exp. Inc. (USA), 633 F.3d 522, 529 (7th Cir. 2011).  In this case, plaintiff discussed in his opening brief all of the grounds argued by defendant for entering judgment in its favor, so I conclude that he had fair notice.  Further, defendant requested summary judgment in its opposition brief, but plaintiff did not argue in his reply brief that any of defendant's arguments caught him off guard or that he needs additional discovery.  Accordingly, I am denying plaintiff's

motion for summary judgment and entering judgment in favor of defendant.

OPINION

Under 18 U.S.C. § 1514A, "[n]o [public] company . . . may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee" that is protected under the statute. The Court of Appeals for the Seventh Circuit has stated that a claim under § 1514A has four elements: (1) the plaintiff engaged in protected activity; (2) the employer knew that the plaintiff engaged in the protected activity; (3) the plaintiff suffered an "unfavorable personnel action"; and (4) the protected activity was a "contributing factor" in the unfavorable action. Harp v. Charter Communications, Inc., 558 F.3d 722, 723 (7th Cir. 2009).

Defendant does not deny that plaintiff's report of alleged tax fraud is protected activity or that defendant was aware of that activity, so I do not need to consider the first two elements. Instead, defendant argues that plaintiff did not suffer an unfavorable personnel action and that he has not adduced any evidence that plaintiff's protected activity was a contributing factor in any of the alleged retaliatory actions. In addition, defendant says that it is entitled to assert a litigation privilege because the conduct at issue occurred in the context of a lawsuit. I will consider each of these arguments in turn.

The first question is whether plaintiff's termination qualifies as an unfavorable personnel action. As a general matter, it does. Under § 1514A, "discharge" is one of the

3

actions covered expressly by the statute.   However, defendant says that this case is different because it is undisputed that plaintiff left defendant's employment under a separation agreement. Dkt. #32-12, Separation Agreement and Full and Final Release of Claims ("Mr. Bogenschneider and K-C have agreed to end their employment relationship on May 7, 2012."). Under the agreement, plaintiff was "released from his regular duties" in May 2010, but defendant continued to pay plaintiff his salary until May 7, 2012. <u>Id.</u> at ¶ 2.a.  At that time, plaintiff could choose to resign or be terminated "due to a restructuring." <u>Id.</u> at ¶ 2.d. When plaintiff did not submit a resignation, defendant terminated him.

I agree with defendant that it would make no sense to characterize a mutual decision as an "unfavorable personnel action." <u>Simpson v. Borg–Warner Automotive, Inc.</u>, 196 F.3d 873 (7th Cir.1999) (voluntary demotion not adverse employment action).  Plaintiff does not allege that defendant coerced him in any way into signing the separation agreement and he does not otherwise argue that the agreement is invalid.

I understand plaintiff's position to be that his termination was unfavorable because it was actually "for cause" rather than simply because his employment ended under the agreement.  As a general matter, I agree with plaintiff that the reason provided by the employer for the termination could be important because it could have consequences for the employee's reputation and future employment.   However, the reason for plaintiff's termination is provided in the agreement itself: "If [plaintiff] declines to submit his resignation [by May 7, 2012], then [defendant] will involuntarily terminate him due to a restructuring."

4

Plaintiff says that defendant did not actually terminate him as part of a restructuring. In support, he cites a document that he says is an "organization chart for [defendant's] tax department." Plt.'s Br., dkt. #29, at 13. However, plaintiff does not explain how the document shows that no restructuring occurred. Even if it did show what plaintiff believes it does, it is not clear how the document could support plaintiff's retaliation claim. If defendant had concerns with plaintiff's performance, but it allowed plaintiff to leave the company voluntarily through the separation agreement, that would *help* plaintiff's future prospects, not hurt them. Plaintiff cannot argue successfully that defendant harmed him by giving him an opportunity to save face.

Plaintiff cites no evidence that defendant characterized his termination at the time as related to his performance. Why would it? The agreement states that plaintiff's employment with defendant would end on May 7, 2012, so that is when it ended. It was unnecessary for defendant to justify its decision or take any other action.

Plaintiff cites statements made *after* plaintiff's termination in which defendant's representatives allegedly stated that plaintiff had been fired for poor performance. This argument merges with plaintiff's claim about "blacklisting," in which he relies on the same statements to argue that defendant tried to interfere with his future employment. Accordingly, I will turn to that claim.

The parties start off on the wrong foot by debating the meaning of "blacklisting," citing cases, statutes and dictionaries. That is not helpful because §1514A does not use the term "blacklisting." As noted above, § 1514A prohibits an employer from "discriminat[ing]

5

against an employee in the terms and conditions of employment" because of the employee's protected conduct. Because of the limitation to the "terms and conditions of employment," I questioned in a previous order whether any actions taken after an employee's termination are covered by the statute. Dkt. #38 at 2. Neither side challenges the decisions in which the Department of Labor has concluded that § 1514A prohibits "blacklisting or other active interference with subsequent employment," Harvey v. The Home Depot, Inc., 2004 WL 5840284, *3 (U.S. Dept. of Labor SAROX 2004), so I will not consider that issue further. However, even if I assume that § 1514A may cover postemployment conduct, it is not useful to engage in a debate over the meaning of a word that does not appear in the text of the statute. The question is not whether defendant's conduct meets a particular definition of "blacklisting," but whether "the challenged action [is] one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." Roney v. Illinois Dept. of Transportation, 474 F.3d 455, 461 (7th Cir. 2007) (citing Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 62 (2006)). That is the standard that courts have applied in both statutory and constitutional retaliation claims. Santana v. Cook County Board of Review, 679 F.3d 614, 622-23 (7th Cir. 2012) (First Amendment); Barton v. Zimmer, Inc., 662 F.3d 448, 456 (7th Cir. 2011) (Age Discrimination in Employment Act); Chapin v. Fort-Rohr Motors, Inc., 621 F.3d 673, 677-78 (7th Cir. 2010); Jones v. Metropolitan School District of Decatur Township, 905 F. Supp. 2d 923, 932 (S.D. Ind. 2012) (Americans with Disabilities Act).

All of the statements plaintiff cites in support of his retaliation claim occurred in the

context of litigation.  First, he cites a June 2012 affidavit submitted in another lawsuit by Pamela Vross, a "human resource representative" for defendant.   Dkt. #32-11.  In summarizing plaintiff's claim, Vross wrote, "Bogenschneider claimed that a poor performance review which he had received in 2009 was in retaliation for his having reported what he contended was 'fraud' that he had discovered at" Kimberly Clark.  Dkt. #32-11 at ¶ 4.

In addition, he cites various passages from a brief filed by defendant in the same state court lawsuit:

> Two years ago Defendant Kimberly-Clark Global Sales entered into a separation agreement with one of its former employees, Plaintiff Bret Bogenschneider. That agreement put to rest a host of allegations raised by Bogenschneider that K-C very much disputed, but about which it opted to buy peace instead of engage in protracted litigation. It didn't work. Encouraged by the fact that the first time he made noise, K-C threw some money his way, Bogenschneider is back.

> * * *

> While in law school, he sued the University of Pennsylvania as a result of his failure to make law review.

> * * *

> Thereafter, Bogenschneider embarked on a series of jobs, none of which lasted for any material amount of time.  First he joined a law firm in Georgia, where he was employed for about a year and a half. Then he moved to Madison, Wisconsin, where he took a job with an accounting firm. He worked there for a year. He then went to a different accounting firm; this time in Milwaukee. Again, he lasted a year.

> * * *

> Consistent with his track record with his previous employers, it was not long before Bogenschneider's employment at K-C came to an end. Bogenschneider

claimed that a poor performance review, which he had received was in retaliation for his having reported what he contended was fraud that he had discovered at K-C.

Dkt. #32-1.

Plaintiff says that all of these statements portray him in a negative light and have hindered his ability to find new employment, but it is questionable whether any of the statements would deter a reasonable person from engaging in activity protected by the Sarbanes-Oxley Act, particularly because plaintiff cites no evidence that any potential employer read the statements or was likely to do so.   Crews v. City of Mt. Vernon, 567 F.3d 860, 869-70 (7th Cir. 2009) ("[N]egative employer comments will support a retaliation claim only if they are severe and pervasive.") (internal quotations omitted).  Even assuming that the statements are materially adverse, I agree with defendant that the statements cannot serve as the basis of a retaliation claim for two reasons:  (1) defendant is entitled to assert a litigation privilege for making the statements; and (2) plaintiff has not adduced any evidence that plaintiff's protected activity played any role in defendant's decision to make these statements.

With respect to a litigation privilege, defendant relies on Steffes, 144 F.3d 1070, in which the court stated that "it will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation prohibited by" federal employment statutes because "[d]efendants . . . must have some leeway to investigate possible defenses without undue fear of being subjected to additional liability in retaliation suits." Id. at 1075, 1077.  The court concluded that the defendant, the plaintiff's former employer, was entitled to assert a

litigation privilege for a claim involving allegations that the defendant had retaliated against the plaintiff by contacting her current employer to discuss a discrimination lawsuit that the plaintiff had filed against the defendant.  Id.  The  court relied on the fact that the defendant's communication with the plaintiff's employer was relevant to the allegations of discrimination.  Id. at 1076 (defendant's "call to [plaintiff's current employer] was a direct and natural consequence of [plaintiff's] response" to discovery requests).  In addition, the court noted that the defendant had not made any misrepresentations to the employer.  Id. at 1077  See also Friemuth v. Fiskars Brands, Inc., 681 F. Supp. 2d 985, 994 (W.D. Wis. 2010) ("[C]onduct occurring within the scope of litigation is rarely a ground for a retaliation claim.").

Plaintiff does not identify any plausible reason why Steffes is not controlling in this case.  Defendant made the statements at issue in the context of a lawsuit that *plaintiff* filed against defendant in 2011 in which plaintiff alleged that defendant had treated him unfairly during his employment and then breached the separation agreement by giving him poor job references.  Dkt. #32-5.  As a result, plaintiff alleged, he had been rejected by many employers as well as a graduate program at the University of Pennsylvania.  Id.

All of the litigation statements that plaintiff calls retaliatory were relevant to his claims in the 2011 lawsuit.  The statements about the "poor performance reviews" were simply a summary of plaintiff's own allegations.  Id. at ¶ 15 (alleging in state court complaint that defendant "issue[d] unfairly low performance reviews to Plaintiff for the 2009 review period" after plaintiff reported alleged tax fraud).  The statement that plaintiff was

"encouraged" to file a new lawsuit because defendant "threw some money his way" is an example of a common and perfectly legitimate attempt by a litigant to call into question the motives of its adversary.  The statements about plaintiff's job history and lawsuit against the University of Pennsylvania provided alternative explanations for plaintiff's difficulty getting into a graduate program and finding employment.  Although plaintiff refers to defendant's statements as defamatory, he does not cite any evidence showing that any of the statements are false.  Some of the statements may  not have cast plaintiff in the most positive light, but plaintiff should have expected that when he chose to sue defendant.  A party who initiates litigation cannot cry foul when the other side proceeds to defend itself.

In his opening brief, plaintiff cites Morgan v. Graham, 228 F.2d 625, 627 (10th Cir. 1956), for the proposition that "no privilege applies where the retaliation itself constitutes criminal conduct or is in violation of a Federal or state law," Plt.'s Br., dkt. #29 at 4, but Morgan was a case about fraud.  It had nothing to do with litigation privilege or alleged retaliation for exercising federally protected rights.   In any event, plaintiff has made no showing that defendant violated any laws.  Plaintiff says that defendant violated Wisconsin's blacklisting law, Wis. Stat. § 134.02, but he does not explain how a state law could limit a federal privilege.  In any event, § 134.02 requires a showing that the defendant had the "intent to blacklist" the plaintiff.  As will be discussed below, plaintiff has not shown that defendant had any intent other than to defend itself in a lawsuit. To the extent that plaintiff means to argue that the litigation privilege should not apply because he believes that defendant violated the Sarbanes-Oxley Act, that is simply a restatement of his retaliation

10

claim.  Because the litigation privilege recognized in <u>Steffes</u> applies expressly to retaliation claims, that argument is a nonstarter.

Plaintiff also cites <u>Zinda v. Louisiana Pacific Corp.</u>, 149 Wis. 2d 913, 440 N.W.2d 548 (1989), but, again, that case has nothing to do with litigation privilege.  Rather, the question was whether an employer was entitled to a "conditional privilege" for a defamatory statement on the ground that the statement was a "communication of common interest." <u>Zinda</u>, 149 Wis. 2d at 922, 440 N.W.2d at 552.  Even if I assume that <u>Zinda</u> could be instructive in a federal lawsuit, plaintiff has not adduced any evidence that defendant made any false statements, so <u>Zinda</u> is not applicable to this case.

In his reply brief, plaintiff says that defendant's answer does not include a litigation privilege defense with respect to the Vross affidavit.  He cites paragraph nine of the affirmative defenses in which defendant stated that "[t]he arguments and statements in K-C's legal briefs were privileged," but it did not say anything about statements in affidavits. Dkt. #40.  Plaintiff does not develop an argument on this point, but, presumably, plaintiff is suggesting that defendant waived a litigation privilege with respect to the Vross affidavit. If that is plaintiff's argument, it is frivolous.  Even if I assume that the word "briefs" in this context does not mean all court filings, "the failure to plead an affirmative defense in the answer works a forfeiture only if the plaintiff is harmed by the defendant's delay in asserting it." <u>Garofalo v. Village of Hazel Crest</u>, 754 F.3d 428, 436-37 (7th Cir. 2014).  In this case, there is no plausible argument that plaintiff has been prejudiced because it is clear that he had notice of the defense.  In his opening brief, he discussed litigation privilege as it applied

to the Vross affidavit.

In any event, I agree with defendant's alternative argument that plaintiff has failed to adduce any evidence that his protected conduct was a contributing factor in defendant's decision to submit the litigation materials that it did.  As discussed above, all of the statements at issue were relevant to plaintiff's claims, so I see nothing suspicious about the statements.

Plaintiff's only evidence to the contrary is a passage from a letter defendant's counsel sent plaintiff's counsel in 2011 before plaintiff filed his state court lawsuit:

> I want to caution Mr. Bogenschneider to proceed carefully.  There are potentially dozens of reasons why Mr. Bogenschneider has not yet obtained new employment. Without evidence of wrongdoing by K-C that resulted in harm to him, he will have a difficult time proving his claim let alone damages. Not only will filing the complaint result in the cessation of all future payments under the separation agreement, but his inclusion in the draft complaint of details of what he characterizes as fraud – details that are superfluous for the claims he asserts in the draft complaint as they have already been fully investigated and settled – smacks of extortion, a violation of Wis. Stat. § 943.30. If we conclude that is what is really going on any lawsuit that is filed will not be about Mr. Bogenschneider's claims but rather about the very substantial counterclaims that will be asserted against him.

Dkt. #32-6.

Nothing in this passage suggests that defendant retaliated against plaintiff because he exercised his rights under the Sarbanes-Oxley Act.  Although counsel is threatening various legal consequences in the letter, these are not consequences of plaintiff's protected conduct, but of plaintiff's decision to sue defendant for breach of contract, which has nothing to do with the federal statute.  Further, it is hardly surprising that a party would attempt to dissuade a potential litigant from suing by threatening a counterclaim or

identifying benefits that may be forfeited as the result of the lawsuit.  Accordingly, I conclude that defendant is entitled to summary judgment on this claim.

Plaintiff's third "count" in his complaint is "harassment," but the only specific conduct he identifies is defendant's statement in a brief in the 2011 state court case that plaintiff had sued his law school when he did not make it onto law review.  He calls defendant's statement harassment because he says the suit against his law school was sealed and should not have been discussed in defendant's brief in state court.  (I have not sealed or redacted this opinion because plaintiff discussed this issue in his summary judgment materials without requesting that any of those materials be sealed or redacted.)

Plaintiff relied on this same statement in the context of his "blacklisting" claim, so it fails because defendant is entitled to assert a litigation privilege and because plaintiff has not adduced any evidence of retaliatory intent.  In any event, as defendant points out, defendant included the statement about the previous lawsuit in its brief because plaintiff discussed it openly during his state court deposition.  Dkt. #32-20 at 24-26.  Although plaintiff stated during his deposition that the *settlement* for that lawsuit was "confidential," he did not say that any other part of the case was sealed.  Plaintiff says in his responses to defendant's proposed findings of fact that he "repeatedly testified that the prior Federal lawsuit was confidential" and that "K-C counsel was informed that the case was sealed."  Dkt. #57 at ¶ 139.  However, he does not cite any portion of his deposition in which he gave that testimony and he does not identify any other reason that defendant would have known that plaintiff's testimony was confidential.

In sum, this is not a close case.  It is clear that plaintiff cannot prevail on any of his claims and it should have been clear to plaintiff when he filed this lawsuit.  I am granting summary judgment to defendant on all of plaintiff's claims.


ORDER

IT IS ORDERED that

1.  Plaintiff Bret Bogenschneider's motion for summary judgment, dkt. #28, is DENIED.

2.  On the court's own motion, summary judgment is GRANTED to defendant Kimberly Clark Global Sales LLC.

3.  The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 29th day of June, 2015.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

14